UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GREEN JEEVA LLC, | Case No.2:25-CV-1122 JCM (DJA) |
| Plaintiff(s), | |
| v. | ORDER |
| LOKESH PATHAK, et al., | |
| Defendant(s). | |

Presently before the court is defendant Mclob America, LLC's motion to dismiss. (ECF No. 26). Plaintiff Green Jeeva filed a response (ECF No. 32), to which defendant Mclob America replied (ECF No. 40).

Also before the court is defendant Lokesh Pathak's motion to dismiss. (ECF No. 27). Green Jeeva filed a response (ECF No. 33), to which defendant Pathak replied (ECF No. 41).

**I.    Background**

Defendant Lokesh Pathak worked for India-based Dietary Business from September 2017 to April 2021. (ECF No. 1 ¶¶ 17, 19; ECF No. 26 at 4; ECF No. 27 at 4). Pathak resides in India. (ECF No. 1 ¶ 10).

Dietary Business is the sister company of plaintiff Green Jeeva, a limited liability company organized in Nevada. (ECF No. 1 ¶ 18). Dietary Business and Green Jeeva share the same workflows and systems such that personnel with proper clearance can access the confidential data and proprietary information of either company. (*Id.* ¶¶ 18, 22). Plaintiff alleges that Pathak had complete access to Green Jeeva's trade secrets while he worked for Green Jeeva. (*Id.* ¶¶ 6, 21,

22). Due to the nature of his work at Dietary Business, Pathak was required to sign a one-year noncompete. (ECF No. 26 at 4; ECF No. 27 at 4).

In May 2025, a whistleblower accused Pathak of cloning plaintiff's proprietary enterprise resource planning ("ERP") software, transacting with more than 165 clients, and undercutting plaintiff's pricing scheme to form a rival company to compete with it. (ECF No. 1 ¶¶ 1, 2, 50). Plaintiff alleges that Pathak's unauthorized access started while he was still working for plaintiff and continues via an inside source since his departure in 2021. (ECF No. 1 ¶¶ 2, 72; Decl. Deepak Jena, ECF No. 35 ¶¶ 3, 4).

Mclob USA, LLC was formed in California in January 2021 by Vidal Espinosa and is currently managed by Fidencio Salas. Plaintiff alleges that Pathak somehow asserts direct or indirect control over the company, though he has never been listed as a manager. (ECF No. 1 ¶ 25, 26).

In 2023, Pathak became a member of defendant Mclob America, a similarly named limited liability company that is also organized in California. (ECF No. 1 ¶¶ 25, 26).

Plaintiff alleges that Pathak divulged trade secrets to Mclob America and Mclob USA, including the proprietary ERP software and customer information, and that Mclob America and Mclob USA knew or should have known that the ERP software and information did not belong to it because Pathak owned or controlled Mclob America and Mclob USA. (ECF No. 1 ¶¶ 59, 60).

Plaintiff brought this lawsuit against Pathak, Mclob America, and Mclob USA, alleging a variety of federal and state claims for relief, including trade secret misappropriation, breach of fiduciary duty (against Pathak), violations of the CFAA and Nevada Computer Crimes Law, civil conspiracy/aiding and abetting, unjust enrichment, and interference with prospective economic advantage. (ECF No. 1). Plaintiff moved for clerk's entry of default against Mclob USA after it

failed to timely enter an appearance and file a responsive pleading. (ECF No. 20). The clerk entered default against Mclob USA on October 10, 2025. (ECF No. 24).

Thereafter, defendants Pathak and Mclob America filed independent motions to dismiss the complaint in its entirety. (ECF Nos. 26, 27).

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss a complaint for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). To avoid dismissal under Rule 12(b)(2), a plaintiff must demonstrate that its allegations establish a prima facie case for personal jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

Absent an evidentiary hearing, the court inquires only into whether the plaintiff's "pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.* Uncontroverted allegations in the complaint must be taken as true, and factual disputes over statements contained in affidavits should be construed in the plaintiff's favor. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002); *see Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) ("Because the prima facie jurisdictional analysis requires us to accept the plaintiff's allegations as true, we must adopt [the plaintiff's] version of events for purposes of this appeal.").

When no federal statute governs personal jurisdiction, the district court applies the law of the forum state. *See Boschetto*, 539 F.3d at 1016. Nevada's long-arm statute is co-extensive with federal standards, so the court may exercise personal jurisdiction if doing so comports with federal constitutional due process. *Id.* "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Two categories of personal jurisdiction exist: (1) general jurisdiction and (2) specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–15, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *see also LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

**III.     Discussion**

    A.  General Jurisdiction

A court may assert general jurisdiction over a defendant when the plaintiff shows that "the defendant has sufficient contacts that approximate physical presence." *In re W. States Wholesale Nat. Gas Litig.*, 605 F. Supp. 2d 1118, 1131 (D. Nev. 2009) (internal quotation marks and citations omitted).  In other words, the defendant's affiliations with the forum state must be so "continuous and systematic" so as to render the defendant essentially "at home" in that forum.  *See Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014).  General jurisdiction is appropriate even if the defendant's continuous and systematic ties to the forum state are unrelated to the litigation.  *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414–16).

District courts have ruled that a limited liability company is "at home" in the state of its formation and where it has its principal place of business.  *See, e.g.*, *Avus Designs, Inc. v. Grezxx, LLC*, 644 F. Supp. 3d 963, 978 (D. Wyo. 2022); *Allen v. IM Solutions, LLC*, 83 F. Supp. 3d 1196, 1204 (E.D. Okla. 2015) (holding that a limited liability company is "at home" in both the state in which it is organized and where it has its principal place of business); *Talentscale, Inc. v. Aery Aviation*, LLC, No. 5:25-mc-1-TKW/MJF, 2025 U.S. Dist. LEXIS 229348, at *8 (N.D. Fla. Oct.

17, 2025) (pointing out that "determining the citizenship of limited liability companies for the purpose of determining whether there is diversity of citizenship differs from the analysis required for a court to exercise personal jurisdiction.") (internal citations omitted); *see also Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014).

Plaintiff does not address general jurisdiction in its complaint or responses to the defendants' motions to dismiss. *See* LCR 47-3 ("The failure of an opposing party to include points and authorities in response to any motion constitutes a consent to granting the motion."). Moreover, there are no facts alleged that would suggest Pathak or Mclob America is essentially "at home" in Nevada by virtue of "continuous and systematic" presence in and contacts with the state. Mclob America is "at home" in California, and subject to the state's general personal jurisdiction within that state consistent with the Due Process Clause, because its principal place of business is California and it was organized in the state. (ECF No. 1 ¶ 11); *see, e.g.*, *Avus Designs, Inc.*, 644 F. Supp. 3d at 978. Accordingly, the court finds that it lacks general personal jurisdiction over the defendants.

B.  Specific Jurisdiction

The Ninth Circuit has established a three-prong test for analyzing an assertion of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

1   The plaintiff bears the burden of proof for the first two prongs. *Id.* If the plaintiff
2   establishes prongs one and two, the defendant must come forward with a "compelling case" that
3   the exercise of jurisdiction would not be reasonable. *Id.*
4
5   When analyzing the first prong, courts in the Ninth Circuit typically apply the *Calder*
6   effects test, which requires that the defendants (1) committed an intentional act, (2) expressly
7   aimed at the forum state, (3) causing harm that the defendants know is likely to be suffered in the
8   forum state. *Id.* at 805.
9
10  As a threshold matter, the defendants argue that it is unclear whether plaintiff is referring
11  to "Mclob Ingredients" or to one of the defendants in its general allegations. (ECF No. 26 at 13;
12  ECF No. 27 at 12). In the general allegations section, plaintiff refers to "Mclob," which is
13  shorthand for "Mclob Ingredients" (*See* ECF No. 1 ¶¶ 17–54). Plaintiff clarifies in a declaration
14  that it believes "Mclob Ingredients" is the website of Mclob America and Mclob USA. (ECF No.
15  35, Decl. Deepak Jena ¶ 3). Assuming this is true, as the court must at this stage, it is clear that
16  plaintiff is referencing Mclob America and Mclob USA.
17
18  The court thus proceeds with its *Calder* analysis, which begins by asking whether
19  defendants committed an intentional act. Here, plaintiff argues it satisfies the first element because
20  the complaint alleges that defendants Pathak and Mclob America engaged in multiple intentional
21  acts that form the basis of its claims. Plaintiff alleges that Mclob America misappropriated Green
22  Jeeva's trade secrets and intentionally interfered with its business relationships. (ECF No. 1 ¶¶
23  59–64). These allegations satisfy the intentional act prong. *See generally Menken v. Emm*, 503
24  F.3d 1050, 1059 (9th Cir. 2007) (intentional act requirement satisfied when plaintiff alleged that
25  defendant intentionally interfered with plaintiff's contractual relations).
26
27  . . .
28

Next, defendants' intentional acts must have been "expressly aimed" at Nevada. *See Schwarzenegger*, 374 F.3d at 802. Courts consider whether the defendants' "business activities reach out beyond one state and create continuing relationships and obligations with citizens of another state." *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 648 (1950); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). This requires that the defendants' conduct must form the necessary connection with the forum state that is the basis for its jurisdiction over him. *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014). Accordingly, the court must "look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) (citing *Walden v. Fiore*, 571 U.S. 277, 134 S. Ct. 1115, 1124–25 (2014)).

Plaintiff alleges that defendants expressly aimed their conduct at Nevada because defendants misappropriated plaintiff's trade secrets and at least four of Green Jeeva's largest Nevada-based customers "have started buying products" from defendants rather than plaintiff based on Pathak's access to plaintiff's trade secrets and proprietary ERP software. (Decl. Deepak Jena, ECF No. 35 ¶ 3). Further, plaintiff alleges that based on Pathak's access to plaintiff's software, he would have known that the customers are based in Nevada. (*Id.*).

It appears to the court that plaintiff is using these four contacts in an attempt to bootstrap personal jurisdiction over defendants in Nevada. They are the defendants' only connection to the state and represent only a handful of dealings among the 165 customers with whom the defendants have allegedly transacted. (ECF No. 1 ¶ 50). Considering the pool of alleged customers, it does not appear that defendants have expressly targeted Nevada, when 161 customers are not alleged to be residents thereof.

. . .

Furthermore, plaintiff fails to clarify the strength of these four contacts. Plaintiff provides only a singular one-off purchase order from one of the customers. A one-off purchase order from Mclob does not create a continuing obligation sufficient for this court to assert personal jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1017 ("the lone transaction for the sale of one item does not establish that the [d]efendants purposefully availed themselves of the privilege of doing business in [Nevada]."). Evidence of an agreement for a long-term contract might.

Unfortunately, the phrase "have started buying," provides no clarity as to Mclob America's relationships with the Nevada-based customers. Although the court construes disputed facts in plaintiff's favor, it cannot assume the existence of a fact that is not asserted (e.g., an ongoing relationship).

The court finds that plaintiff's allegations and evidence do not plausibly establish that Pathak and Mclob America expressly aimed their trade secret misappropriation at Nevada. *See Schwarzenegger*, 374 F.3d at 802.

Without express aim, plaintiff cannot meet the *Calder* effects test and thus cannot establish that defendants purposefully directed their actions at Nevada. Because this test is not satisfied, plaintiff has not met its burden of establishing the first prong of the specific jurisdiction test. The court therefore does not address the remaining two prongs. *See Boschetto*, 539 F.3d at 1016 (the jurisdictional inquiry ends if the plaintiff fails at the first step).

C. Jurisdictional Discovery

Plaintiff argues that rather than dismiss the complaint, the court should grant it leave to conduct jurisdictional discovery. (ECF No. 26 at 8; ECF No. 27 at 8–9). In a footnote in both responses, plaintiff explains that defendants rejected its request for limited jurisdictional discovery regarding defendants' business activities and travel to Nevada, as well as their communications

with plaintiff over the past five years.  (ECF No. 26 at 8; ECF No. 27 at 9).  Defendants did not reply to plaintiff's request.  See LCR 47-3.

The decision whether to grant jurisdictional discovery is typically within the discretion of the district court.  *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).  "Jurisdictional discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."  *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 507 (9th Cir. 2023) (quotation omitted).  In contrast, "a mere hunch that discovery might yield jurisdictionally relevant facts, or bare allegations in the face of specific denials, are insufficient reasons for a court to grant jurisdictional discovery."  *Id.* (quotation omitted).

The court is inclined to grant jurisdictional discovery, but more limited than as requested by plaintiff.  It is feasible that a limited discovery request into defendants' business activities and travel to Nevada could turn up evidence of "express aiming" at the state.  However, the court declines to permit discovery of the last five years of defendants' communications with plaintiff, as plaintiff fails to explain why it does not have access to this information or why it is relevant to establishing personal jurisdiction.

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED the parties may conduct jurisdictional discovery until April 9, 2026.

IT IS FURTHER ORDERED that plaintiff may file a supplemental opposition to each motion to dismiss (ECF Nos. 26, 27) within 21 days after the close of jurisdictional discovery, and

1  that the defendants may file a supplemental reply to those oppositions 14 days after being served
2  with plaintiff's supplemental opposition.[1]

DATED January 9, 2026.

_____
UNITED STATES DISTRICT JUDGE

---

[1] The court recognizes that defendants also moved for dismissal under 12(b)(3) and 12(b)(6). Because the outcome of jurisdictional discovery may result in the termination of the entire case, the court defers ruling on these bases until the parties have completed jurisdictional discovery and filed their supplemental briefs.