UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

GREEN JEEVA LLC,

Plaintiff(s),

v.

LOKESH PATHAK, et al.,

Defendant(s).

Case No.2:25-CV-1122  JCM (DJA)

ORDER

With the close of court-ordered jurisdictional discovery, the court revisits defendant Mclob America, LLC's and defendant Lokesh Pathak's individually filed motions to dismiss plaintiff Green Jeeva's complaint.  (ECF Nos. 26, 27).

The court also considers plaintiff's unopposed motion for leave to file under seal.  (ECF No. 51).

**I.    Background**

This case revolves around allegations of trade secret misappropriation.  The alleged facts have been discussed previously by this court and may be referenced in the complaint, (ECF No. 1), or in the court's January 9, 2026, order.  (ECF No. 48 at 1–3).

On October 15, 2025, defendants Pathak and Mclob America filed independent motions to dismiss the complaint based on lack of personal jurisdiction, improper venue, and for failure to state a claim upon which relief can be granted.  (ECF Nos. 26, 27).  In a January 9, 2026, order, the court addressed only the 12(b)(2) personal jurisdiction arguments and deferred ruling on the issues of venue and pleading.  (ECF No. 48 at 10 n.10).

The court found that it lacked general personal jurisdiction over the defendants. In analyzing specific jurisdiction using the *Calder* effects test, the court found that plaintiff's allegations satisfied the intentional act prong but were insufficient to demonstrate that defendants expressly aimed their intentional conduct at Nevada. Because plaintiff did not carry its burden under the second prong of *Calder*, the court did not consider the final prong of the *Calder* effects test. (ECF No. 48 at 8). The parties were permitted to conduct jurisdictional discovery and to thereafter submit supplemental briefing on the motions.

## II.   Motion to Seal

As an initial matter, Green Jeeva moves to file its supplemental consolidated opposition to the defendants' motions to dismiss and the exhibits attached thereto under seal. (ECF No. 51). Green Jeeva seeks to redact the names of its Nevada customers, their contact information, and the number of sales made by Green Jeeva to those customers. Green Jeeva maintains customer identities as nonpublic and alleges that they are trade secrets. The court finds that compelling reasons exist to grant Green Jeeva's motion.

The need to keep customer identities and sales information sealed outweighs the public's interest in disclosure. *See Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006) (explaining that courts must balance the competing interests "of the public and the party who seeks to keep certain judicial records secret"); *see also Equabli, Inc. v. EverChain LLC*, No. 2:25-cv-01444, 2025 WL 2612779, at *1 (D. Nev. Sept. 2, 2025) ("trade secrets and proprietary confidential business information are routinely considered 'compelling reasons' to seal") (internal citations omitted). Moreover, the seal is limited to the redacted confidential information; the public will still have access to the rest of the opposition. Green Jeeva is given leave to file the unredacted supplemental opposition and exhibits under seal, and the clerk is instructed to maintain

them under seal.

## III.   Personal Jurisdiction

The court now turns to the issue of personal jurisdiction.

A.  Legal Standard

The Ninth Circuit has established a three-prong test for analyzing an assertion of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

When analyzing the first prong, Ninth Circuit courts typically apply the *Calder* effects test, which requires that the defendants (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendants know is likely to be suffered in the forum state. *Id.* at 805.

B.  Discussion

*1.  Step One:* Calder *Effects*

In its January 29, 2026, order, the court determined that the intentional act prong of the *Calder* effects test was satisfied.  (ECF No. 48 at 6).  The court now considers the second and third prongs of the *Calder* effects test.

**i.   Express Aiming**

Here, there are sufficient jurisdictional facts in the complaint to find that the alleged

intentional conduct by defendant Lokesh Pathak was expressly aimed at Nevada.[1]  Pathak, who is currently a member and manager of defendant Mclob America LLC, purportedly misappropriated trade secrets belonging to plaintiff Green Jeeva.  (ECF No. 1 ¶¶ 2, 25, 26, 59, 60, 72).

Pathak was an employee of Dietary Business, the India-based arm of Green Jeeva.  Dietary Business and Green Jeeva allegedly share "operations and workflows," including confidential information and a proprietary software upon which this suit is based in part.  (*Id.* ¶ 22).  When Pathak was promoted to Head of Procurement and Regulatory Affairs, he gained access to Green Jeeva's proprietary information, confidential customer lists, and sensitive business information and operations.  (*Id.* ¶¶ 20–21).  The complaint alleges that while employed at Dietary Business, Pathak cloned Green Jeeva's enterprise resource planning ("ERP") software and divulged Green Jeeva's confidential customer, product, and pricing information to a third party for future sales use in order to build up his own competitive business.  (*Id.* ¶ 32).

Although Pathak was physically located in India when he allegedly improperly accessed the proprietary information and cloned the ERP software, the *Calder* test "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum."  *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1088 (9th Cir. 2023).  It is plausible, given Pathak's high-up role at Dietary Business, that he understood how the sister companies were intertwined (system-wise), and that accessing and misusing Green Jeeva's company proprietary data to compete with Green Jeeva would hurt Green Jeeva in Nevada.

. . .

---

[1] Plaintiff's supplemental opposition focuses on Mclob and does not allege additional jurisdictional facts as to Pathak.  The court's order concerning jurisdiction over Pathak is a reconsideration of its original decision pursuant to its inherent powers.  *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 887 (9th Cir. 2001); Fed. R. Civ. P. 60.

It is true that more than a defendant's mere knowledge of a plaintiff's connections to a forum is required. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) (citing *Walden v. Fiore*, 571 U.S. 277, 134 S. Ct. 1115, 1124–25 (2014)). This requirement is satisfied here.

Mclob America's alleged conduct is also sufficient to establish express aiming at Nevada. Courts consider whether a defendant's "business activities reach out beyond one state and create continuing relationships and obligations with citizens of another state." *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 648 (1950); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985).

The court's concern was that Green Jeeva was using a mere "four contacts in an attempt to bootstrap personal jurisdiction over defendants in Nevada," when the contacts "represent only a handful of dealings among the 165 customers with whom the defendants have allegedly transacted." (ECF No. 48 at 7). It also requested that Green Jeeva clarify the strength of the four contacts. The court noted that a one-off purchase order was insufficient to establish personal jurisdiction, while evidence of an agreement for a long-term contract might satisfy this requirement. (*Id.* at 8). Of course, it is foreseeable that other evidence might be sufficient.

To be clear, "the outcome of the express-aiming inquiry does not depend on the number of sales made to customers in the forum." *Herbal Brands*, 72 F.4th at 1095. "Drawing a line based on the number of sales would require an arbitrary distinction that is not preferred in this area of the law." *Id.* (citing *Burger King*, 471 U.S. at 485–86).

Mclob's position is that it does not target specific states in its marketing and sales efforts, does not pay for advertisements, does not personally ship the goods into the state, does not have "ongoing" contracts, and does not know what state the company is from when it first decides to

reach out.  (ECF No. 59).  While relevant, these facts are not dispositive to the court's analysis.

The evidence produced by jurisdictional discovery shows that this is not a case of an isolated purchase order sale.  The record shows that over the last three years, Mclob has transacted with at least three of Green Jeeva's customers, to the tune of approximately twenty-nine purchase orders.  (ECF No. 53, Ex. A).  On at least twenty-nine occasions, Mclob caused its goods to be shipped into Nevada via agreement with a third party or the buyer's arrangements.  (ECF No. 59, Ex. A at 54:13–16).

Mclob does not appear to intend for these purchase orders to be "isolated occurrences," as it continues to communicate with these customers and reach out to other Green Jeeva Nevada-based customers.  (ECF No. 53, Ex. B at 13–16).  *See, e.g.*, *Herbal Brands*, 72 F.4th at 1095; *Briskin v. Shopify, Inc.*, 135 F.4th 739, 758 (9th Cir. 2025); *see also NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 625 (7th Cir. 2022), *cert. denied*, 143 S. Ct. 577, 214 L. Ed. 2d 341 (2023)) (reasoning that, when a defendant "structured its sales activity in such a manner as to invite orders from [a forum] and developed the capacity to fill them[,] [i]t cannot now point to its customers in [that forum] and tell us, 'It was all their idea.'" (citation and some quotation marks omitted)).

Thus, Mclob's relations with any Nevada-based companies alleged to have been tainted by the misappropriation were by its "own choice and not 'random, isolated or fortuitous.'" *Ford Motor Co. v Mont. Eighth Jud. Dist. Court*, 592 U.S. 351, 359 (2021) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).  Considering the foregoing, the express aiming requirement is satisfied as to both defendants.

### ii.  Causation

As to the third prong of the *Calder* effects test, the defendants' aimful conduct reflects their knowledge that the harm caused by such conduct would likely be felt in Nevada.

*See, e.g., CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011) ("[A] corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business."); *Boyd Gaming Corp., v. B Hotel Grp., LLC*, No. 2:13-cv-00981, 2014 U.S. Dist. LEXIS 20459, at *10–11 (D. Nev. Feb. 18, 2014); *see also Elec. Solidus, Inc. v. Proton Mgmt. Ltd.*, No. 2:24-cv-08280, 2025 U.S. Dist. LEXIS 68183, at *36 (C.D. Cal. Apr. 9, 2025).

Since Green Jeeva's principal place of business is in Nevada, it is foreseeable that economic harm caused by defendants' alleged misappropriation of trade secrets would be felt in Nevada. *See, e.g.*, *Graduation Sols. LLC v. Luya Enter. Inc.*, No. CV 19-1382, 2020 U.S. Dist. LEXIS 258847, at *19–20 (C.D. Cal. May 5, 2020); *Boyd Gaming Corp.*, 2014 U.S. Dist. LEXIS 20459, at *11. Thus, the third element of the effects test is satisfied.

Accordingly, the defendants purposefully directed their activities at Nevada.

### 2. Arise Out of or Relate to Forum Related Activities

The Ninth Circuit applies a "but-for" test "to determine whether a particular claim arises out of forum-related activities and thereby satisfied the second requirement for specific jurisdiction." *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). "Under the 'but for' test, 'a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action.'" *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013) (citation omitted), *aff'd sub nom.*, *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015).

"The standard for this element is not as to the degree or proportional volume of the impact of a defendant's forum-related activities, but solely as to whether the plaintiff's claims arise out of or relate to any of defendant's forum-related activities." *Boyd Gaming Corp.*, 2014 U.S. Dist. LEXIS 20459, at *11–12.

Here, the test is satisfied because, under the facts alleged, Green Jeeva would not have suffered economic damage (e.g., loss of customers, goodwill, market position) but for the defendants' misappropriation and misuse of its trade secrets.

### 3. Reasonableness of Exercising Jurisdiction

Because Green Jeeva has satisfied the first two prongs, defendants bear the burden of "present[ing] a compelling case" that the exercise of jurisdiction is not reasonable. *Schwarzenegger*, 374 F.3d at 802. In determining whether the exercise of jurisdiction comports with "fair play and substantial justice" and is therefore reasonable, courts balance the following seven factors

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002).

The factors weigh in Green Jeeva's favor. Factor one weighs in Green Jeeva's favor because defendants have "purposefully injected" themselves into Nevada. *See Corp. Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 790 (9th Cir. 1987). Factor two weighs in favor of Green Jeeva. With respect to Pathak, it presents as much of a burden on Green Jeeva to litigate in India as it does for Pathak to litigate in Nevada. *See Sinatra v. Nat'l Equirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). Likewise, Mclob America's California-based representatives and witnesses need only travel one state over, and "modern advances in communications and transportation have significantly reduced the burden of litigating in another country" or neighboring state. *See id.*

. . .

. . .

- 8 -

Considering factor three, there is no conflict with California or Indian law as Green Jeeva's claims arise under Nevada and federal law.[2]  As to factor four, Nevada has a "recognized interest in providing an effective means of redress for its residents." *All Am. Res., LLC v. Calais Res., Inc.*, 3:14-cv-00442, 2015 WL 13653990, at \*5 (D. Nev. Feb. 24, 2015) (internal citation omitted). Because Green Jeeva is incorporated and headquartered in Nevada, Nevada has a compelling interest in the adjudication of the dispute occurring in the state.

Factor five is neutral.  Green Jeeva argues that "much of the relevant evidence and witnesses" are in Nevada but does not substantiate its claim with a list of witnesses or explain why it has more evidence than is located with Mclob America in California, with Pathak in India, or with its sister company in India. (ECF No. 32 at 8); (ECF No. 33 at 8).  Due to an ongoing criminal case in India concerning the alleged whistleblower, it is plausible that at least some of the relevant witnesses and discovery will be located there.  (ECF No. 26 at 13); (ECF No. 27 at 13).

In that vein, "neither the Supreme Court nor our court" gives much weight to the inconvenience to plaintiff in litigating in another forum that provides effective relief.  *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 476 (9th Cir. 1995).  Green Jeeva has not demonstrated the unavailability of India as an alternative forum.  *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993) ("[P]laintiff bears the burden of proving the unavailability of an alternative forum.").  The seventh factor favors defendants.

Accordingly, the record shows that defendants purposefully directed their activities at Nevada; the claims in this case arose out of or related to their forum related activities; and the

---

[2] Defendants claim that there is a conflict with the sovereignty of ongoing proceedings in India, but these are criminal proceedings concerning a third party and thus India cannot be said to be "adjudicating the claims at issue in this action."  (ECF No. 26 at 13); (ECF No. 27 at 13). Additionally, this factor is "not dispositive [as to defendant Mclob] because, if given controlling weight, it would always prevent suit against a foreign national in a United States court." *Sinatra*, 854 F.2d at 1199.

exercise of personal jurisdiction over the defendants is reasonable. The court may properly exercise specific personal jurisdiction over both defendants.

**IV.    Venue**

Because the court declines to dismiss the complaint for lack of personal jurisdiction, it now turns to defendants' arguments pursuant to 12(b)(3) and 12(b)(6).

A.    Legal Standard

In a civil action, venue is proper if it falls into one of three categories under 28 U.S.C. § 1391(b). Section 1391(b) allows an action to proceed in the desired venue if: (1) every defendant resides in the state where the federal district is located; (2) a substantial part of the events or omissions giving rise to the claim occurred in that federal district; or if no other federal district is appropriate, (3) venue is proper in any district where any defendant is subject to the court's personal jurisdiction. *Id.* § 1391(b)(1)–(3).

Where there is a dispute over venue, the court looks to 28 U.S.C. §§ 1404(a) and 1406(a) to determine whether to transfer or dismiss the case. Section 1406 applies where venue is improper or wrong under the § 1391(b) factors. It allows the court to dismiss the case or transfer it to a federal district where the case could have been brought. 28 U.S.C. § 1406(a).

Section 1404(a), on the other hand, allows the court to transfer a case filed in an appropriate venue if it is "in the interest of justice." Section 1404(a) codified the doctrine of forum non conveniens, which allows transfer from an otherwise proper venue if the defendant meets the "heavy burden in opposing the plaintiff's chosen forum." *Sinochem Intern. Co. Ltd. v. Malyasia Intern. Shipping Corp.*, 549 U.S. 422, 430 (2007).

However, transfer is limited to federal district courts. Thus, "[a] district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be

- 10 -

more convenient for the parties." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001) (citation omitted).

When considering whether to dismiss an action based on the doctrine of forum non conveniens, a court analyzes two factors: "(1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." *Id.*

The purpose of Section 1404(a) is to prevent the waste of "time, energy, and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . ." *Ferens v. John Deere Co.*, 494 U.S. 516, 525, 531, (1990) (quoting *Continental Grain Co. v. Barge FBL*-585, 364 U.S. 19, 26–27 (1960)) (internal quotations omitted).

B. Discussion

1. *Proper Venue*

As explained above, venue is proper only in three cases. The first case does not apply here as the defendants are not residents of Nevada. It is unclear whether a substantial part of the events or omissions giving rise to the claim occurred in Nevada. Although defendants purportedly contracted with four of Green Jeeva's Nevada-based customers, that is just a fraction of the 165 total "key customers" Green Jeeva alleges defendants have transacted with. Moreover, Pathak's alleged duplication of the ERP software and other bad acts, while felt in Nevada, occurred in India.

However, as discussed in the previous section, this court has personal jurisdiction over the defendants. Thus, the third scenario or "catch-all" provision applies.

2. *Forum non conveniens.*

Defendants argue that the court should dismiss the action under the doctrine of forum non conveniens. The court gives deference to Green Jeeva's preference to sue in the United States. *See Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1449 (9th Cir. 1990) ("This

Circuit has found that while a U.S. Citizen has no absolute right to sue in a U.S. court, great deference is due plaintiff[] because a showing of convenience by a party who has sued in his home forum will usually outweigh the inconvenience the defendant may have shown.").

The court considers first whether an adequate alternative forum exists.  Defendants argue that India is an adequate alternative forum because there is a criminal action pending there involving the whistleblower that alerted Green Jeeva of the defendants' alleged conduct.  "An alternative forum is deemed adequate if: (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy."  *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011).  Defendants are amenable to process in India, thereby satisfying the first element.

However, they fail to identify any remedy that India would afford Green Jeeva for its losses.  The pre-existing Indian criminal prosecution against the whistleblower is not a substitute that affords Green Jeeva a remedy regarding its *civil* claims against the defendants.  Under the arguments presented to the court, the defendants have not met their burden to show that India is an adequate alternative forum.  *See Lueck*, 236 F.3d at 1143 (in forum non conveniens cases, defendants carry burden to demonstrate availability of an adequate alternative forum).

Even if India were an adequate alternative forum, the public and private interest factors demonstrate that this court should not disturb Green Jeeva's choice of Nevada as a forum for this case.  The defendants carry the burden to show that private and public interest factors "strongly favor trial in a foreign country."  *Id.* at 1145.  Concerning the relevant private interest factors, Mclob America and Green Jeeva witnesses would have to travel to India, though modern advances in technology have significantly reduced the burden of litigating in another country.  *See id.*; *Sinatra*, 854 F.2d at 1199.  As previously addressed, access to physical evidence and other sources

of proof for this civil case appear to be disbursed between India and United States, rather than concentrated in one or the other.

The following relevant public interest factors weigh in favor of retaining this suit: Nevada's interest in providing a means of redress for its residents; Pathak's ownership interest in California-based Mclob America; this court's familiarity with the governing law; and the relation of this dispute to Nevada.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 259–61 (1981).

Defendants have not met their burden to show that this court should depart from its deference to the plaintiff's choice of forum.  *See Lueck*, 236 F.3d at 1145.  The motion to dismiss for forum non conveniens is denied.

## V.    Failure to State a Claim

### A.  Legal Standard

The court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although rule 8 does not require detailed factual allegations, it does require more than labels and conclusions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Furthermore, a formulaic recitation of the elements of a cause of action will not suffice.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citation omitted).  Rule 8 does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  *Id.* at 678–79.

To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  *Id.*  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  When a complaint pleads facts that are merely consistent

- 13 -

with a defendant's liability, and shows only a mere possibility of entitlement, the complaint does not meet the requirements to show plausibility of entitlement to relief. *Id.*

In *Iqbal,* the Supreme Court clarified the two-step approach district courts are to apply when considering a motion to dismiss. *Id.* First, the court must accept as true all of the allegations contained in a complaint. However, this requirement is inapplicable to legal conclusions. *Id.* Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id.* at 679. When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court held as follows:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

If the court grants a Rule 12(b)(6) motion to dismiss, it should grant leave to amend unless the deficiencies cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments . . . undue prejudice to the opposing party . . . futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The court

should grant leave to amend "even if no request to amend the pleading was made." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted).

B. Discussion

1. *Group Pleading*

As a threshold matter, the defendants argue that Green Jeeva's claims are impermissibly group-pled. This argument is unavailing. "Group pleading is not fatal to a complaint if the complaint still gives defendants fair notice of the claims against them." *Tivoli LLC v. Targett Sankey S. P. A.*, No. 14-1285-DOC, 2015 U.S. Dist. LEXIS 189660, at *10 (Feb. 3, 2015) (citing *Frazier v. U.S. Bank Nat'l Ass'n*, No. 11 C 8775, 2013 U.S. Dist. LEXIS 45330, at *2–3 (N.D. Ill. Mar. 29, 2013).

In the general allegations section, Green Jeeva refers to "Mclob," which is shorthand for "Mclob Ingredients." (ECF No. 1 ¶¶ 17–54). Green Jeeva clarifies in a declaration that it believes "Mclob Ingredients" is a website of Mclob America and Mclob USA." (ECF No. 35, Decl. Deepak Jena ¶ 3). Assuming this is true, as the court must at this stage, it is clear that Green Jeeva is referencing Mclob America and Mclob USA. *See generally Roberts v. Cnty. of Riverside*, No. EDCV 19-1877, 2020 WL 3965027, at *3 (C.D. Cal. June 5, 2020); *In re Pac. Fertility Ctr. Litig.*, No. 18-cv-01586, 2019 WL 3753456, at *3 (N.D. Cal. Aug. 8, 2019) "[W]here the defendants are alleged to be 'related entities' who acted in concert it is entirely possible that the [undifferentiated] allegations of wrongdoing are intended to include each and every entity defendant.").

Accordingly, the court moves forward with its analysis of the sufficiency of Green Jeeva's claims.

. . .

. . .

2. *Sufficiency of the Claims*

**i.   Trade Secret Misappropriation**

Trade secret misappropriation claims under 18 U.S.C. § 1836 and NRS 600A.010 *et seq.* have similar elements and are therefore evaluated together. *See Aristocrat Techs., Inc. v. Light & Wonder, Inc.*, No. 2:24-cv-00382, 2024 WL 3104806, at *4 (D. Nev. June 24, 2024). "To state a claim for trade secret misappropriation under the Nevada Uniform Trade Secrets Act ("NUTSA"), NRS 600A.030, a plaintiff must allege: (1) a valuable trade secret; (2) misappropriation of the trade secret . . .; and (3) that the misappropriation was made in breach of an express or implied contract or by a party with a duty not to disclose." *Id.* To state a claim under the Defend Trade Secrets Act of 2016 ("DTSA"), a plaintiff must allege: (1) its possession of a trade secret; (2) defendants' misappropriation of that secret; and (3) that the misappropriation caused or threatened damage to the plaintiff. *Elko, Inc. v. WTH Commer. Servs., LLC*, 2023 WL 6141623, at *2 (D. Nev. Sept. 20, 2023).

Green Jeeva has pled protectable trade secrets with sufficient particularity. Under the DTSA and NUTSA, trade secrets are broadly defined. *Id.* "A trade secret is one that is not generally known or ascertainable and derives value from being kept secret." *Aristocrat Techs.*, 2024 WL 3104806, at *4. At this stage, it is improper for this court to conduct a fact-based inquiry into whether this information is confidential information that constitutes trade secrets. *Id.* Plaintiff's complaint need not "spell out the details of the trade secret," "[n]or does [the] plaintiff need to plead trade secrets with extensive detail beyond what is required to put the defendant[s] on notice of the boundaries of the trade secret." *Id.*

Here, the complaint satisfies this standard. Green Jeeva identifies the ERP software and confidential data within it as trade secrets. This software contains sensitive customer and vendor

data, pricing strategies, and supply logistics.  Furthermore, it was custom-built, not commercially licensed, and access is limited to senior personnel bound by confidentiality agreements.  These allegations are sufficient to plead a protectable trade secret.

Green Jeeva sufficiently alleges that defendants misappropriated its trade secrets.  The complaint alleges that Pathak "knowingly and deliberately accessed, used, and disclosed Green Jeeva's trade secrets" to defendant Mclob America, which "knew or should have known that Pathak was using Green Jeeva's trade secret information for their benefit."  (ECF No. 1 ¶ 59).  Pathak was allegedly aware that the ERP software and information contained therein did not belong to them, as they were accessible only to senior personnel with restricted access.  (*Id.* ¶ 60).  Likewise, Green Jeeva argues that such knowledge was imputed to Mclob America because it is controlled or owned by Pathak.  (*Id.*).

As to the third element, Green Jeeva sufficiently alleges resulting damages under the DTSA.  The complaint also plausibly alleges that the misappropriation was "wrongful" under the NUTSA.  As a director at Dietary Business, Pathak was under a duty not to disclose.  Likewise, Green Jeeva claims that Mclob America is also liable because it derived the trade secret information from Pathak.  Whether Pathak's fiduciary duties extended to Green Jeeva is a question of fact that may be revealed in discovery.

With all required elements of the DTSA and the NUTSA sufficiently and plausibly pled, the court declines to dismiss these claims.

### ii.  Computer Fraud and Abuse

Defendants cite *Dresser Rand Co. v. Jones* for the proposition that there is a difference between misusing information properly accessed and exceeding one's authorized access to obtain restricted information.  957 F. Supp. 2d 610.  Whether defendant Pathak was misusing the

customer information and ERP software or exceeding authorized access is a factual determination that is not for the court to decide at this time.

As to Mclob America, it appears that Green Jeeva is relying on the theory that Mclob America would be liable because Pathak controls and/or owns Mclob. However, because this claim concerns conduct that took place before the formation of Mclob, the claim is dismissed without prejudice as to this defendant.

### iii. Nevada Computer Crimes Law

The court finds no defect in plaintiff's pleading of NRS 205.465 as to defendant Pathak. However, because the claim concerns conduct that took place before the formation of Mclob America it is dismissed without prejudice as to defendant Mclob America.

### iv. Breach of Fiduciary Duty

Plaintiff argues that Pathak owed a fiduciary duty to Green Jeeva. Construing the alleged facts in the light most favorable to the non-moving party, it is plausible that due to the close relationship between Dietary Business and Green Jeeva, sharing of their intelligence, and Pathak's access to the confidential information and trade secrets, Pathak owed a fiduciary duty to Green Jeeva as well. Accordingly, the court declines to dismiss the claim.

### v. Civil Conspiracy/Aiding and Abetting

Here, plaintiff asserts that defendants "took the above-described concerted actions to accomplish unlawful objectives, including efforts to weaponize Green Jeeva's confidential information to systematically poach its customers and supplant its market position." (ECF No. 1 ¶ 89). Defendants' concern here is that the complaint does not state who was the aider and abettor and who was the principal, however a plain reading of the complaint plausibly reveals Pathak to be the principal actor in this case. Accordingly, the court declines to dismiss this claim.

### vi.  Unjust Enrichment

Plaintiff has adequately alleged unjust enrichment.  Under Nevada law, a plaintiff must allege that (1) it confers a benefit on the defendants; (2) the defendants appreciate such a benefit; and (3) there is acceptance and retention by the defendants of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.  *Nautilus Ins. Co. v. Access Med., LLC*, 482 P.3d 683, 688 (2021) (internal citation omitted).

Defendants argue that there is no direct relationship between the parties by which plaintiff could have conferred a benefit.  Considering the alleged corporate relationships discussed in this order, whether a benefit flowed from Green Jeeva to the defendants is an issue of fact not appropriate for determination at this time.  Thus, the court declines to dismiss this claim for relief.

### vii. Intentional Interference with Prospective Economic Advantage

Green Jeeva has sufficiently pled the requisite elements of intentional interference with prospective economic advantage.  To prevail on such a claim, a plaintiff must plead the following elements:

> (1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct.

*Consol. Generator-Nevada v. Cummins Engine Co.*, 734 P.2d 1221, 1225 (1998)).

First, Green Jeeva alleges a prospective contractual relationship with a number of potential and existing customers.  Second, Green Jeeva alleges that Pathak and Mclob America knowingly used Green Jeeva's confidential customer data and related information to undercut plaintiff's pricing scheme and win over customers.  Third, Green Jeeva alleges that defendants intentionally

acted to harm it by disrupting its relationships with its customers. Fourth, Green Jeeva alleges that defendants lacked privilege or authorization to use Green Jeeva's confidential business information to obtain these customers. Fifth, Green Jeeva alleges actual harm because of Pathak's and Mclob America's conduct, as it lost substantial business and revenue from existing and prospective customers.

With each element of a claim for interference with prospective economic advantage sufficiently pled, the court declines to dismiss this claim.

## VI. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant Mclob America LLC's motion to dismiss the complaint (ECF No. 26) be, and the same hereby is, DENIED in full on the grounds of personal jurisdiction and venue, and DENIED in part on the grounds that plaintiff has failed to state a claim upon which relief can be granted.

The court dismisses *without prejudice* the following claims against defendant Mclob America: (1) the third claim for relief under the Computer Fraud and Abuse Act; and (2) the fourth claim for relief pursuant to the Nevada Computer Crimes Law.

IT IS ALSO ORDERED that defendant Lokesh Pathak's motion to dismiss the complaint (ECF No. 27) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff Green Jeeva's motion to seal (ECF No. 51) be, and the same hereby is, GRANTED.

DATED June 9, 2026.

_____
UNITED STATES DISTRICT JUDGE

- 20 -